Avery J. GANT, Libelant,

v.

UNITED FRUIT COMPANY, a Corporation, Respondent.

No. 2959.

United States District Court
S. D. Alabama, S. D.

Dec. 31, 1963.

Alex T. Howard, Jr., of McCorvey, Turner, Johnstone, Adams & May, Mobile, Ala., for libelant.

W. Boyd Reeves, of Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for respondent.

DANIEL HOLCOMBE THOMAS, District Judge.

This cause coming on for hearing by agreement of counsel for both parties on the sole question of the Respondent's pleas of laches as set forth in Respondent's Answer, as amended, in the 16th, 17th and 21st paragraphs thereof, and after the introduction of depositions, documentary evidence and the taking of testimony in open Court and after argument of counsel, both orally and on brief, the same having been considered by the Court, the Court now makes its Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. This is an admiralty action under the General Maritime Law brought by the Libelant, Avery J. Gant, a seaman, against the Respondent, United Fruit Company, to recover damages for failure to furnish the Libelant prompt and necessary medical care for a stroke which he suffered while aboard one of Respondent's ships.

2. During the month of March 1958, while the Libelant was employed as a seaman aboard the S.S. SANTO CERRO, one of Respondent's vessels, he due to some cause the determination of which is not here at issue, became partially paralyzed and unable to communicate orally due to aphasia, and unable to communicate by writing messages due to partial paralysis of his hands and arms, and was otherwise left physically and mentally unable to advise anyone of the facts pertinent to this action. The Libelant was hospitalized for extensive periods from March 1958 until the date of this hearing, and during most of such periods of hospitalization he was treated as an inpatient at the United States Public Health Service Hospital in New Orleans, Louisiana. According to the records of said hospital, the Libelant suffered partial paralysis of his body and expressive aphasia, and was mentally confused during the period following the occurrence of his said stroke and until April 1962, which was shortly prior to his filing his libel in this cause on the 13th day of July 1962; and from the time Libelant suffered said stroke in March 1958, until April 1962, Libelant, as a result of said stroke, was physically and mentally unable to communicate with anyone sufficient to advise them of the facts relating to his said stroke and to his subsequent treatment or the absence thereof.

3. During the month of May 1958, Libelant's wife contacted Mr. John M. Dunnam, Jr., an attorney in New Augusta, Mississippi, regarding the Libelant's circumstances; and during that same month Mr. Dunnam contacted the Respondent and advised it that he represented the Libelant and at that time made an unsuccessful attempt to obtain from the Respondent facts relating to Libelant's circumstances. From time to time during the year 1958, Libelant's wife advised Mr. Dunnam that the Libelant was still paralyzed, unable to speak, and unable to communicate with anyone in any way. During the year 1958, Mr. Dunnam made unsuccessful attempts to locate witnesses and obtain facts relating to Libelant's condition.

4. During the year 1959, Mr. Dunnam associated with him in this matter Mr. Curtis Breland, an attorney practicing law in Leakesville, Mississippi, as he felt Mr. Breland might be able to accomplish something for the Libelant. Mr. Breland visited the Libelant at the United States Public Health Service Hospital about the middle of the year 1959, and at that time Libelant was partially paralyzed, mentally confused, and unable to speak; and although various efforts were made to have the Libelant communicate with Mr. Breland, all such efforts were in vain. Several months later the Libelant was brought to Mr. Breland's office in Leakesville, Mississippi, and efforts were made to communicate with Libelant at that time; but all such efforts were unsuccessful, as the Libelant was still unable to speak or write or to communicate with anyone. Mr. Breland also tried to locate witnesses through a union hall in Mobile, Alabama, and although he learned of the name of a prospective witness and went to Mobile, Alabama, and interviewed such witness, it developed that such person knew nothing of the circumstances connected with the Libelant's condition.

5. During the year 1959, Mr. Breland associated with him in this matter Mr. Louis B. Porterie, an attorney practicing law in New Orleans, Louisiana. Mr Porterie, on or about the month of October 1959, contacted Mr. Robert A. Collins, an employee of the Respondent, and claim was again made against the Respondent for the Libelant; but at that time neither Mr. Porterie, Mr. Breland nor Mr. Dunnam knew the true nature of any claim which the Libelant might have had against the Respondent. Mr. Porterie visited the Libelant at the United States Public Health Service Hospital in New Orleans, Louisiana, and made efforts to communicate with the Libelant; but as the Libelant was paralyzed, unable to speak and unable to communicate with Mr. Porterie so as to advise Mr. Porterie of the events surrounding his stroke suffered in March of 1958, Mr. Porterie was still unable to ascertain the nature of Libelant's claim.

6. During the first part of the year 1962, the Libelant began to regain his ability to speak and communicate with others and at that time employed Mr. Alex T. Howard, Jr., an attorney practicing law in Mobile, Alabama, who, with due diligence, then proceeded to file the original libel in this cause.

■ 7. The Respondent received notice during the month of May 1958, that counsel had been employed for the Libelant and that a claim was being made against the Respondent by the Libelant, although the Respondent was not advised as to the exact nature of such claim. Subsequently and during the year 1959 the Respondent was again advised that claim was being made on behalf of the Libelant. These contacts by such attorneys were sufficient to place the Respondent on notice that some claim would probably be made against it by the Libelant, and the Respondent had ample opportunity to investigate the facts surrounding the matters complained of in the libel. The Respondent offered no evidence of prejudice suffered by it as a result of the late filing of the libel in this cause. The Libelant was not guilty of failure to use reasonable diligence in filing his libel in this cause and the Respondent has suffered no prejudice to its rights or interests by virtue of the delay in filing said libel until the 13th day of July 1962, and no prejudice to the Respondent has ensued from the mere passage of time.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter of this cause.

2. This action is not barred by laches.

3. The defense of laches set forth in the 16th and 17th paragraphs of Respondent's Answer are not supported by the facts.

■ 4. This action is not barred by the three-year statute of limitations of the Jones Act, Title 46 U.S.C.A. Section

688, as this action is not based upon said act, but upon the General Maritime Law.

5. The 4th defense set forth in the 21st paragraph of Respondent's Answer, as amended, does not state a valid defense to this action as this action is not based upon the Jones Act.